IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ELAINE CHILDERS,

    Plaintiff,

vs.

Case No. 04-1168-JTM

UNIFIED SCHOOL DISTRICT NO. 457,

    Defendant.

MEMORANDUM AND ORDER

This is an action under the Americans with Disabilities Act, 42 U.S.C. 12111, in which the plaintiff Elaine Childers, a school bus driver, who alleges that she was terminated from her job, and denied a transfer to another position, because she was diagnosed as an insulin dependent diabetic. The matter is before the court on the motion for summary judgment of the defendant Kansas Unified School District No. 457. The school district contends that Childers was not qualified for the bus driver position, and that she was offered alternative employment which she failed to pursue.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir. 1988). The party moving for summary judgment must demonstrate its entitlement to summary judgment beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir. 1985). The moving party need not

disprove plaintiff's claim; it need only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations or denials contained in its pleadings or briefs. Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing summary judgment must do more than simply show there is some metaphysical doubt as to the material facts. "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a **genuine issue for trial**.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis in *Matsushita*). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

The court notes that in many instances in her response plaintiff denies various facts asserted by defendant, but fails to offer any admissible evidence which would permit a contrary conclusion. These facts are deemed admitted.

**Findings of Fact**

Childers was previously employed by the district as a school bus driver. In late 1999, she was diagnosed with insulin-dependent diabetes. In February of 2000, Childers's supervisor Dianne Hahn received a letter from Childers's doctor stating that Childers was diabetic and that she would be insulin dependent. The doctor also stated in the letter that, in his opinion, Childers should not drive a school bus because the risk of harm was too great.

The Kansas Department of Education promulgates regulations that include qualification requirements for school bus drivers. The department adopts by reference the United States Department of Transportation's regulations concerning the qualifications for interstate carrier drivers, specifically 49

C.F.R. 391.41. That regulation provides:

> A person is physically qualified to drive a commercial motor vehicle if that person —
>
> ...
>
> (3) Has no established medical history or clinical diagnosis of diabetes mellitus currently requiring insulin for control.

49 C.F.R. 391.43 provides:

> If insulin is necessary to control a diabetic condition, the driver is not qualified to drive a commercial motor vehicle in interstate commerce.[1]

After Hahn received the letter, she told Childers that she could not continue to drive a school bus. Hahn later told Childers she could obtain other medical opinions, as long as one was from a diabetes specialist, if she wanted to keep her job. Hahn wrote to Childers on February 18, 2000 that she was being terminated from her school bus driving position because her physician had diagnosed her diabetes as "insulin dependent," despite her record as being "a very dependable and reliable employee in the Transportation Department during the four years of employment." (Plf. Exh. C.)

Childers has continued to hold a Commercial Driver's licence issued by the State of Kansas, and has subsequently held employment as a commercial driver.

In September, 2000, Childers sought and received a medical opinion that her diabetes does not disable her from driving. In May, 2000, Childers also saw another doctor who indicated she could still be employed as a driver. Childers has also held other types of employment since February, 2000.

Childers has described the effect diabetes has had on her life as: "Not a lot." (Childers dep. at 18).

---

[1] Plaintiff Childers admits the existence of the regulation, but stresses that it applies only to driving in interstate commerce. But this is because § 391.43 is a federal regulation. The State Department of Education regulation adopts § 391.41, and the Kansas regulation does not incorporate any geographic restriction, but instead applies to "[e]ach person employed by a school district or by a school bus contractor who, *at any time*, will provide student transportation." Kan.Admin.Reg. 91-38-6(g)(1) (emphasis added). The regulation provides that all "school transportation providers in Kansas" must meet the same "*physical* qualification requirements" as the federal regulation. Id. at (g)(1) (emphasis added). That is, the regulation only imports the medical qualification standards of the federal regulation, not its additional interstate commerce application. By its very nature, the Kansas regulation is designed to apply to all school bus drivers in Kansas; plaintiff's suggested interpretation not only clashes with the language of the regulation, it would work a mockery of the regulation's purpose of setting uniform standards for school bus drivers.

The only changes diabetes has had on Childers's everyday life is that she now takes insulin, has to eat on schedule, and has to see her doctor more often. She believes there is nothing that diabetes keeps her from doing. She does not regard herself as disabled, and believes that she has no impairment.

Hahn avers that she did not regard Childers as disabled, and only regarded her as not meeting the regulation specifying qualifications for a school bus driver. She discontinued Childers's employment as a bus driver because of the regulations that forbid insulin-dependent diabetics from driving school buses.

Childers learned of a vacant groundskeeper post after her mother contacted the district Assistant Superintendent, James E. Lentz, and informed Lentz that she had lost her school bus driving job. Lentz arranged for plaintiff to be interviewed by Gerald Bell, the Service Center director. During that interview on February 21, 2000, Bell went through the essential functions of the job, and asked about Childers's experience and ability to do them. Childers related her prior experience with lawns and trees as a zoo employee, but indicated that she would not be able to meet the lifting requirements of the job. Bell did not hire her.

Bell was not told that Childers had diabetes or that she was otherwise disabled, and had no other knowledge of Childers's diabetes. He did not regard Childers as disabled when he interviewed her, and made the decisions not to hire her.

On March 30, 2000, Childers was again interviewed about a substitute custodian position. Bell felt that Childers appeared uninterested in the job. No one else was hired for either of the jobs for which Childers interviewed, as hiring someone for those positions at that time was not a necessity.

Plaintiff filed a Charge of Discrimination with the EEOC on October 6, 2000, alleging she had been discharged from her bus driver job, not given an advertised position of groundskeeper, and not been granted Family Medical Leave in violation of the ADA.

Following Childers's deposition in the present litigation, she was given another opportunity to interview for a groundskeeper position, and was hired to fill that post in February, 2005.

**Conclusions of Law**

To support her claim under the ADA, Childers must provide proof that she is "disabled" under the Act, meaning she has "a physical or mental impairment that substantially limits one or more [of her] major life activities." 42 U.S.C. § 12102(2)(A). The Supreme Court has expressly found that diabetes by itself is not a disability, where the disease does not impair the plaintiff's ability to work or engage in other major life activities. *Sutton v. United Airlines*, 527 U.S. 471, 483 (1999.) *See also Munoz v. Western Resources*, 225 F. Supp. 2d. 1265 (D. Kan. 2002); *Murphy v. United Parcel Service,* 946 F. Supp. 872 (D.Kan. 1996); *Moore v. City of Overland Park*, 950 F. Supp. 1081 (D. Kan. 1996).

Here, Childers has failed to show that she is disabled within the meaning of the ADA. She was not regarded as disabled by her supervisors. Rather, Childers was terminated by defendant because applicable state regulations prevent an insulin dependent diabetic from driving a school bus. After the Childers was terminated from the bus job, she was considered for alternate work, and the uncontroverted facts establish that the person who considered her for the new work did not know that Childers had diabetes.

Childers's response to the motion for summary judgment utterly fails to address the issue, focusing instead on the secondary question of whether the defendant failed to reasonably accommodate Childers. Reasonable accommodation becomes an issue under the ADA only after a plaintiff demonstrates that she falls within the protection of the Act by demonstrating that she is a qualified individual with a disability. This is what Childers has not done, and indeed, given the uncontroverted evidence, cannot do. *See Murphy v. United Parcel Service,* 527 U.S. 516 (1999).

IT IS ACCORDINGLY ORDERED this 30th day of June, 2005 that the defendant's Motion for Summary Judgment (Dkt. No. 19) is hereby granted; plaintiff's Motion for Hearing (Dkt. No. 24) is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE